UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN T. SESSIONS; HISTORIC FLIGHT FOUNDATION, a Washington nonprofit corporation; and FWF LTD., a Washington corporation, | CASE NO. 2:21-cv-01490-LK |
| | ORDER |
| Plaintiffs, | |
| v. | |
| UMB BANK, N.A., a foreign corporation, | |
| Defendant. | |

This matter comes before the Court on two separate motions: first, a motion to dismiss (Dkt. No. 14) by plaintiffs and counterclaim defendants John T. Sessions, Historic Flight Foundation, and FWF, Ltd. (the "Plaintiffs/Counterclaim Defendants"), and second, a motion by defendant and counterclaim plaintiff UMB Bank ("UMB") to enforce a North Dakota order for attachment against Plaintiffs/Counterclaim Defendants, or alternatively, for a prejudgment writ of attachment under Washington law (Dkt. No. 16). For the reasons discussed below, the Plaintiffs/Counterclaim Defendants' motion to dismiss is GRANTED in part and DENIED in part,

and UMB's motion to enforce the North Dakota order is DENIED in part. The Court denies UMB's motion to enforce the North Dakota order and defers judgment on UMB's motion in the alternative for a writ of prejudgment attachment until after a hearing is held pursuant to Revised Code of Washington ("RCW") Section 6.25.070.

## I. BACKGROUND

This action stems from a commercial real estate foreclosure action that the parties are litigating in the District Court of the State of North Dakota in the County of Williams Northwest Judicial District (the "North Dakota Action"). UMB serves as indenture trustee for certain bonds issued to develop a housing facility known as the Eagle Crest Apartments in Williston, North Dakota, close to the Bakken oil field. Dkt. No. 16 at 2; Dkt. No. 15-3 at 5; Dkt. No. 17-1 at 11. The proceeds of the bonds were loaned to Eagle Crest Apartments, LLC ("Eagle Crest"), a Washington limited liability company. Dkt. No. 15-3 at 2, 5. A crash in oil prices doomed the project. Dkt. No. 17-1 at 11, 15–18.

UMB filed suit in the North Dakota court in July 2019, seeking, among other things, foreclosure of the Eagle Crest Apartments. Dkt. No. 15-3. Following sale of the property at a sheriff's sale in October 2020, UMB sought a deficiency judgment against Eagle Crest in the North Dakota Action. Dkt. No. 1-1 at 5–6; *see also* Dkt. No. 15-3 at 31 (as of May 5, 2021, UMB sought a deficiency judgment in the amount of $32,596,554.72). UMB also sought relief against John Sessions, Historic Flight Foundation, and FWF, Ltd., alleging that Sessions is a governor of Historic Flight Foundation and the sole governor of FWF, Ltd., and that Sessions and these two entities engaged in fraudulent transfers of funds loaned to Eagle Crest by UMB. Dkt. No. 15-3 at 2, 4, 16–27, 33–37, 39–42.

In March 2021, UMB filed a Motion for Writ of Prejudgment Attachment in the North Dakota Action, seeking to attach assets belonging to Plaintiffs/Counterclaim Defendants. Dkt. No.

15-4 at 1. Granting the motion in part, the North Dakota court found that UMB "may have attachment against the Defendants" under North Dakota Century Code Section 32-08.1-14 based on its fraudulent transfer claims. *Id.* at 4. The court accordingly ordered that UMB could attach Plaintiffs/Counterclaim Defendants' assets located in North Dakota after a hearing to establish the value of the assets. *Id.* at 5. However, the court denied UMB's request to attach John Sessions' personal home located in Island County, Washington, and aircrafts owned by Historic Flight Foundation and FWF that are also located in Washington. *Id.* at 2–3. The court noted that its partial denial of UMB's motion should not be construed to limit a Washington court's ability to issue a prejudgment writ of attachment. *Id.* at 3.

In September 2021, Plaintiffs/Counterclaim Defendants filed a complaint in King County Superior Court, seeking a declaratory judgment and injunction preventing UMB from attempting to attach their Washington assets prior to a full adjudication of the North Dakota Action. Dkt. No. 1-1. In November 2021, UMB timely removed the action to this Court. Dkt. No. 1. UMB subsequently asserted counterclaims against Plaintiffs/Counterclaim Defendants seeking (1) recognition and enforcement of the North Dakota court's order, (2) a pre-judgment writ of attachment of Plaintiffs/Counterclaim Defendants' property located in Washington State, and (3) the appointment of a receiver over the assets of Plaintiffs/Counterclaim Defendants. Dkt. No. 12.

In December 2021, Plaintiffs/Counterclaim Defendants filed a motion to dismiss UMB's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 14. UMB then amended its counterclaims and argued that the motion to dismiss was moot, declining to substantively respond to the motion. Dkt. Nos. 15, 18. UMB also filed a motion to enforce the North Dakota order, or, alternatively, for pre-judgment writ of attachment. Dkt. No. 16.

1

## II. JURISDICTION

2    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties are citizens of

3 different states: UMB is incorporated in, and has its principal place of business in, Missouri, and

4 Plaintiffs/Counterclaim Defendants are citizens of Washington. Dkt. No. 1 at 2–3; Dkt. No. 1-1 at

5 4–5. The amount in controversy exceeds $75,000, as UMB seeks to attach fifteen aircraft and a

6 personal home. Dkt. No. 15 at 7; Dkt. No. 15-4 at 2. UMB alleges that much of the

7 Plaintiffs/Counterclaim Defendants' tortious conduct occurred in Washington State. *See, e.g.*, Dkt.

8 No. 15-3 at 18, 21, 22.

9

## III. DISCUSSION

10 **A. Plaintiffs/Counterclaim Defendants' Motion to Dismiss**

11    1. <u>Legal Standard</u>

12    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a

13 complaint for failure to state a claim. The court must assume the truth of the complaint's factual

14 allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*,

15 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that

16 are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine*

17 *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations

18 that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

19 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts

20 consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563;

21 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22    On a motion to dismiss, a court "may 'generally consider only allegations contained in the

23 pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'"

24 *Manzarek*, 519 F.3d at 1030–31 (quoting *Outdoor Media Group, Inc. v. City of Beaumont*, 506

F.3d 895, 899 (9th Cir. 2007)). A court is permitted to take judicial notice of facts that are incorporated by reference in the complaint. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "'could not be saved by any amendment.'" *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 692 (9th Cir. 2001)). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

2.   The Motion to Dismiss is Not Moot

Plaintiffs/Counterclaim Defendants argue that this Court should dismiss UMB's counterclaims because (1) the North Dakota prejudgment writ of attachment is not a final judgment and is therefore not entitled to recognition; (2) UMB failed to plead sufficient facts for a separate and new prejudgment writ of attachment to be issued in Washington; and (3) UMB failed to demonstrate that a receiver should be appointed in this matter. Dkt. No. 14. In its response, UMB does not substantively respond to Plaintiffs/Counterclaim Defendants' motion, and instead contends that its amendment of its counterclaims moots the motion. Dkt. No. 18.

When an amended complaint is filed while a motion to dismiss is pending, it generally moots the motion to dismiss. *Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2016 WL 4734310, at *2 n.3 (W.D. Wash. Sept. 12, 2016). "However, when the amended complaint is substantially identical to the original complaint, an amended complaint will not moot the pending motion to dismiss." *Id.* Specifically:

defendants should not be required to file a new motion to dismiss simply because

> an amended pleading was introduced while their motion was pending[;] [i]f some
> of the defects raised in the original motion remain in the new pleading, the court
> simply may consider the motion as being addressed to the amended pleading. To
> hold otherwise would be to exalt form over substance.

6 Charles Alan Wright, et al., Federal Practice and Procedure § 1476 (3d ed. 1998) (Apr. 2021 Update); *see also Bird v. Easton*, 859 F. App'x 299, 302 (10th Cir. 2021).

Here, the Court agrees with Plaintiffs/Counterclaim Defendants that UMB made only trivial, non-substantive changes to its counterclaims, modifying some punctuation and capitalization, and adding a brief procedural history explaining why the amendment was timely. In these circumstances, allowing UMB to take a free pass on responding would not only exalt form over substance; it would effectively allow UMB to improperly grant itself more time to respond to the motion—and concomitantly delay this Court's consideration of the motion—by forcing the movants to refile it.

The Court therefore considers Plaintiffs/Counterclaim Defendants' motion as being addressed to the amended counterclaims. UMB's failure to substantively respond may be considered by the Court as an admission that the motion has merit. LCR 7(b)(2); *see also NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1341 (W.D. Wash. 2021); *Wright v. Gregorio*, No. C18-1006-RSM, 2019 WL 972783, at *1 (W.D. Wash. Feb. 28, 2019). The motion indeed has merit with respect to Count I of UMB's Amended Counterclaims, which seeks enforcement of the North Dakota order. Dkt. No. 15-4 at 6–7.

3.  Because the North Dakota Order Does Not Provide This Court Anything to Enforce, Count I of UMB's Amended Counterclaims is Dismissed

Plaintiffs/Counterclaim Defendants move to dismiss Count I on the ground that the North Dakota order, Dkt. No. 15-4, is not a final judgment and is therefore not entitled to recognition by this Court. Dkt. No 14 at 8–9. UMB contends that the order is "final and nonmodifable." Dkt. No. 26 at 3.

1      Under the Full Faith and Credit Clause of the United States Constitution, a judgment

2 rendered by another state is entitled to recognition in Washington. U.S. Const. art. IV, § 1 ("Full

3 faith and credit shall be given in each state to the public acts, records, and judicial proceedings of

4 every other state."); *State v. Berry,* 5 P.3d 658, 662 (Wash. 2000) ("'The Full Faith and Credit

5 Clause provides a means for ending litigation by putting to rest matters previously decided between

6 adverse parties in any state or territory of the United States.'") (quoting *In re Estate of Tolson,* 947

7 P.2d 1242, 1247 (Wash. App. 1997)). Under Washington's Uniform Enforcement of Foreign

8 Judgments Act ("UEFJA"), creditors holding a judgment against a debtor from another jurisdiction

9 can enforce that judgment in Washington. RCW § 6.36.025.

10      Here, whether final or not, the North Dakota order provides nothing for this Court to

11 enforce. "'[A] judgment of a court in one State is conclusive upon the merits in a court in another

12 State only if the court in the first State had power to pass on the merits—had jurisdiction, that is,

13 to render the judgment.'" *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident*

14 *Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982) (*quoting Durfee v. Duke,* 375 U.S. 106, 110

15 (1963)). If the foreign court "did not have jurisdiction over the subject matter or the relevant

16 parties, full faith and credit need not be given." *Id.* at 705. Here, the North Dakota court expressly

17 held that it did not have jurisdiction to issue a writ of attachment for property located outside of

18 North Dakota. Dkt. No. 15-4 at 2–3. That the North Dakota court granted UMB's motion with

19 respect to Plaintiffs/Counterclaim Defendants' property located *within* North Dakota is

20 immaterial.[1] Because North Dakota law precluded the court from issuing a prejudgment writ of

21 attachment for property outside the state, no judgment has been entered with respect to

22

---

23 [1] Nor is it relevant that the North Dakota court stated in dicta that "even if [it] had authority to attach [the] out-of-state property, it would limit such attachments to the amounts pled against each Defendant[.]" *Id.* at 5. That the court chose

24 to frame this statement as a hypothetical further underscores that it did not authorize attachment of property in Washington.

Plaintiffs/Counterclaim Defendants' property located in Washington.

Because the Court has concluded that there is no foreign judgment for this Court to enforce, it need not address the parties' arguments regarding the finality—or relevance thereof—of the North Dakota order. Count I of UMB's Amended Counterclaims seeks to enforce an order that, by its own terms, is not enforceable as to property in this State. Plaintiffs/Counterclaim Defendants' Motion to Dismiss is therefore GRANTED as to Count I, and UMB's motion for recognition and enforcement of the North Dakota order is DENIED.

4.   Count II of UMB's Amended Counterclaims Adequately States a Claim for a Prejudgment Writ of Attachment Under Washington Law

Plaintiffs/Counterclaim Defendants urge this Court to dismiss UMB's counterclaim for a prejudgment writ of attachment because (1) UMB should be precluded from raising its corporate veil-piercing theory in this Court because it has not pierced Eagle Crest's corporate veil in North Dakota; (2) this Court should not "interfere" in the North Dakota Action; (3) UMB has not exercised its right to attach Plaintiffs/Counterclaim Defendants' property in North Dakota and should therefore not be permitted to do so in Washington State; and (4) UMB cannot satisfy Washington's voidable transfers act. Dkt. No. 14 at 9–14.

The Court rejects Plaintiffs/Counterclaim Defendants' arguments regarding veil-piercing because UMB has not raised that theory as a basis for the relief it requests in this Court.

With respect to Plaintiffs/Counterclaim Defendants' contention that this Court's issuance of a prejudgment writ of attachment would somehow interfere with the North Dakota Action, it is hard to see how. This is not an action to "transfer title to out of state property." Dkt. No. 14 at 9. Nor is it a problem that "UMB has still not obtained a deficiency judgment against any of the [Plaintiffs/Counterclaim Defendants]," *id.* at 10, because this action is for prejudgment relief. *See* RCW § 6.25.020 (at any time "before judgment," a claimant "may have the property of . . . one or

more of several defendants, attached in the manner prescribed in this chapter, as security for the satisfaction of such judgment as the plaintiff may recover").

Plaintiffs/Counterclaim Defendants' argument that UMB should not be allowed to pursue property here because it hasn't done so in North Dakota falls flat in light of UMB's allegation that there is no property to attach in North Dakota. Dkt. Nos. 12 at 4, 15 at 7 n.3; *see also Does v. Wasden*, 982 F.3d 784, 790 (9th Cir. 2020) (on a motion to dismiss, courts "accept the factual allegations of the complaint as true and construe the pleadings in the light most favorable to the plaintiffs").

Finally, UMB's allegations are sufficient to state a claim for a prejudgment writ of attachment under Washington law. Plaintiffs/Counterclaim Defendants assert that UMB's counterclaim "merely recites the elements of RCW 6.25.030" and "does not present factual content that would allow the Court to draw the reasonable inference that [Plaintiffs/Counterclaim Defendants] are liable for the alleged misconduct." Dkt. No. 14 at 13. However, they acknowledge that exhibits attached to a complaint "are deemed part of the complaint and are therefore properly considered by a court on a 12(b)(6) motion," Dkt. No. 14 at 7, and the allegations in UMB's Third Amended Complaint in the North Dakota Action—which is attached to its Amended Counterclaims, Dkt. No. 15-3—are sufficient to satisfy UMB's burden.

Under Washington law, prejudgment attachment is governed by RCW Sections 6.25.010 to 6.25.280. These statutes allow a claimant to apply for a prejudgment writ of attachment in order to obtain security for satisfaction of any judgment the claimant may recover. Procedurally, the claimant must apply for the writ, making the preliminary showing required by RCW Section 6.25.060(1), and the responding party must be given notice and an opportunity to be heard, RCW § 6.25.070. The party seeking the writ must also execute and file a bond before the writ of

ORDER - 9

attachment issues. RCW § 6.25.080.[2] Substantively, the applicant must establish the probable validity of its claims and that there is probable cause to believe that the alleged grounds for attachment exist. RCW § 6.25.070; *Yi Qiao v. Rongfang Chan*, No. C20-1821-RSM, 2020 WL 7641212, at *3 (W.D. Wash. Dec. 23, 2020); *INX, LLC v. Music Grp. Servs. U.S., Inc.*, No. C13-2126-RAJ, 2013 WL 6729612, at *2 (W.D. Wash. Dec. 19, 2013).

Grounds for attachment are listed in RCW Section 6.25.030. Here, UMB contends that a prejudgment writ of attachment is warranted on the statutory grounds in either RCW Section 6.25.03(6) or RCW Section 6.25.03(8). Dkt. No. 16 at 9–10. RCW Section 6.25.03(6) provides that the court may issue a writ of attachment on the grounds that "the defendant has assigned, secreted, or disposed of, or is about to assign, secrete, or dispose of, any of his or her property, with intent to delay or defraud his or her creditors." UMB alleges that "Counterclaim Defendants have orchestrated a series of fraudulent transfers and are about to dispose or have disposed of their property in whole or in part with intent to defraud their creditors," and that "Counterclaim Defendants engaged in a pervasive pattern of fraudulent conduct including, but not limited to: (1) fraudulent misrepresentations to [UMB]; (2) fraudulent transfers of Eagle Crest's funds to insiders with the intent to hinder, delay, or defraud the Trustee and Bondholders; and (3) fraudulent transfers of Eagle Crest's funds to insiders for less than reasonably equivalent value." Dkt. No. 15 at 5, 7.

UMB's Third Amended Complaint supplies more detailed factual allegations regarding the alleged fraudulent transfers by each of the Plaintiffs/Counter Defendants. *See* Dkt. No 15-3 at 16–22. These details include the specific amounts of "net known fraudulent transfers" from Eagle

---

[2] The bond must be "in no case less than three thousand dollars . . . and double the amount for which plaintiff demands judgment, or such other amount as the court shall fix" to compensate the opposing party in case the writ is determined to be wrongfully sued out. *Id.*

Crest to Plaintiffs/Counter Defendants and allegations that transfers were made to entities "under the control of John Sessions," "without supporting receipts or invoices" and "without supporting documentation," for, e.g., reimbursement for travel in a "Cessna jet . . . used exclusively by Sessions" that resulted in payment to FWF, "downtown parking in Seattle, Washington for parking used primarily, if not exclusively, by Sessions," and for Sessions' stays at the Fairmont Olympic Suites in Seattle. *Id.* The Third Amended Complaint also alleges that Sessions "siphoned money from Eagle Crest to pay for sudden expenses at [Historic Flight Foundation], such as $300,000 in June 2015," and that he often donated substantial amounts of money to Historic Flight Foundation using Eagle Crest funds "without proper memorialization of those transfers[.]" *Id.* at 24–25.

UMB further alleges that all Plaintiffs/Counterclaim Defendants were "insiders" of Eagle Crest who knew Eagle Crest was insolvent at the time they received the transfers, and that the transfers were made with actual intent to hinder, delay, or defraud UMB and without receiving a reasonably equivalent value in exchange for the transfers, while Eagle Crest was (1) a debtor to UMB, (2) insolvent, and (3) "engaged in a business for which its remaining assets were unreasonably small." *See* Dkt. No. 15-3 at 34–37, 39–42. These allegations sufficiently state a claim under the North Dakota Uniform Voidable Transactions Act, N.D.C.C. §§ 13-02.1-01–13-02.1-13.

Taking all of its well-pleaded factual allegations as true, UMB's allegations are sufficient to state a claim for a prejudgment writ of attachment, which requires only that it establish the "probable validity" of its claim and that there is "probable cause" to believe that a statutory ground for attachment exists. RCW § 6.25.070. Accordingly, Plaintiffs/Counterclaim Defendants' motion to dismiss Count II is DENIED.

ORDER - 11

5. <u>Count III of UMB's Amended Counterclaims Adequately States a Claim for Appointment of a Receiver</u>

In Count III of UMB's Amended Counterclaims, UMB seeks appointment of a receiver on the grounds that, "[i]n light of the Counterclaim Defendants' history of making and receiving the Transfers, the amounts transferred are in danger of being lost or materially injured or impaired," and because "[t]he cash proceeds of the Transfers are in danger of waste, impairment, or destruction, and it is necessary to collect, conserve, manage, control, or protect that cash from the Counterclaim Defendants' use or further transfer of the funds." Dkt. No. 15 at 8.

The Court has equitable power under federal law to appoint a receiver. Fed. R. Civ. P. 66; *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009) ("[F]ederal law governs the issue of whether to appoint a receiver in a diversity action[.]"). The court may appoint a receiver as an ancillary, provisional action in connection with a pending matter, but "a federal court of equity will not appoint a receiver where the appointment is not ancillary to some form of final relief[.]" *Gordon v. Washington,* 295 U.S. 30, 38–39 (1935). This is because appointment of a receiver "is not an end in itself." *Kelleam v. Maryland Cas. Co. of Baltimore, Md.*, 312 U.S. 377, 381 (1941) ("A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity.").

Appointing a receiver is an "extraordinary equitable remedy," and there is "no precise formula" that determines when a receiver may be appointed. *Canada Life Assur. Co.*, 563 F.3d at 844 (cleaned up). Rather, federal courts consider a variety of factors, including: "(1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh

injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* (cleaned up). The Ninth Circuit has found that "foremost" among the relevant factors is "whether the property was of insufficient value to insure payment, and whether the defendant was of doubtful financial standing." *Id.*

Although it is not entirely clear from UMB's Amended Counterclaims which cause of action constitutes the claim underlying its request for a receiver, given its invocation of RCW Section 7.60.025, which provides for court appointment of a receiver "when the party is determined to have a probable right to or interest in property that is a subject of the action and in the possession of an adverse party, or when the property . . . is in danger of being lost or materially injured or impaired," either of UMB's first two causes of action could serve as the underlying claim.

UMB's request for a receiver plausibly alleges that several of the relevant factors for appointing a receiver have been satisfied, including that Plaintiffs/Counterclaim Defendants have engaged, or are likely to engage, in fraudulent conduct, and that the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered. Dkt. No. 15 at 8; *see supra* at 10–11. UMB's allegations are adequately pled, and Plaintiffs/Counterclaim Defendants' motion to dismiss is DENIED as to Count III of the Amended Counterclaims.

**B.  UMB's Motion for Prejudgment Writ of Attachment and Discovery**

 1.  Prejudgment Writ of Attachment

In their opposition to UMB's motion for a prejudgment writ, Plaintiffs/Counterclaim Defendants argue that UMB has failed to satisfy the prerequisites for a writ of attachment under RCW Section 6.25.030 because (1) UMB "provide[s] no caselaw that supports its position that

transferring money amongst businesses meets the criteria" for a writ; (2) the expert report upon which UMB relies is unsworn and therefore should not be considered; (3) UMB does not argue that Plaintiffs/Counter defendants have sold or otherwise attempted to hide or sell their property; (4) there is no evidence of fraud at the inception as required by RCW Section 6.25.030(8); and (5) UMB failed to provide adequate notice as required by RCW Section 6.25.070(1) and (4). Dkt. No. 22 at 9–10.

As this Court held with respect to Plaintiffs/Counterclaim Defendants' motion to dismiss, UMB has met the preliminary showing required by RCW Section 6.25.060(1). *See supra* at 8–11. However, UMB is not entitled to a writ of attachment until the notice and hearing requirements of RCW Section 6.25.070 have been satisfied, and, as it concedes, those requirements have not yet been met. *See* Dkt. No. 26 at 4; *Glasser v. Blixseth*, No. C14-1576-RAJ, 2015 WL 671634, at *3 (W.D. Wash. Feb. 17, 2015) (denying a request for a prejudgment writ of attachment in the absence of a hearing). At the hearing, it is UMB's burden to "establish the probable validity of the claim sued on and that there is probable cause to believe that the alleged ground for attachment exists." RCW § 6.25.070. The hearing also provides Plaintiffs/Counterclaim Defendants an opportunity to "confront and cross-examine an[y] adverse witness and to present evidence and oral argument in support of [their] claim or defense." *Rogoski v. Hammond*, 513 P.2d 285, 289 (Wash. App. 1973).

The Court accordingly defers judgment on UMB's request for a prejudgment writ of attachment under Washington law until after the hearing under RCW Section 6.25.070 that has been set by the Court's prior order. *See* Dkt. No. 29.

2.  Discovery

In its motion, UMB "requests authority to conduct discovery in aid of the pre-judgment writ of attachment," "to the extent necessary given the pending litigation." Dkt. No. 16 at 10. The Court defers judgment on UMB's request until after the hearing. The parties should be prepared

to address the necessity and scope of potential discovery in this action at the hearing under RCW Section 6.25.070.

### IV. CONCLUSION

For the reasons stated above, the Plaintiffs/Counterclaim Defendants' motion to dismiss is GRANTED as to Count I of UMB's Amended Counterclaims and DENIED as to Counts II and III. UMB's motion to enforce the North Dakota order is DENIED, and the Court defers judgment on UMB's motion in the alternative for a writ of prejudgment attachment under Washington law and for discovery until after the hearing under RCW Section 6.25.070, as set by the Court's prior order, Dkt. No. 29.

Dated this 4th day of March, 2022.

Lauren King
United States District Judge

ORDER - 15